**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**AT LONDON**
**CRIMINAL ACTION NO. 13-30-DCR-2**
**CIVIL ACTION NO. 16-130-DCR**

UNITED STATES OF AMERICA                                    PLAINTIFF

V.

JOHN THOMPSON                                              DEFENDANT

**REPORT AND RECOMMENDATION**

Pending is defendant's motion for postconviction relief under 28 U.S.C. §2255.  Doc. 202.  After considering the United States' response (doc. 211), defendant's reply (doc. 215), the remainder of the record and applicable law, the Court recommends that the motion be denied.

**I.  Relevant Factual and Procedural History**

Without a plea agreement, in November 2013 defendant pleaded guilty to one count of conspiring to distribute oxycodone and one count of distributing oxycodone.  Doc. 97.  The presiding district judge held an evidentiary hearing in January 2014 to resolve a factual dispute regarding the drug quantity attributable to defendant and his co-defendants.  The Court ultimately concluded that defendant was responsible for 8,750 oxycodone pills (doc. 104) and in March 2014 defendant was sentenced to 190 months' imprisonment.  Doc. 139.   The Sixth Circuit affirmed defendant's sentence on direct appeal in February 2015 (doc. 171) and the Supreme Court denied defendant's petition for a writ of certiorari on June 22, 2015.  Doc. 188. Defendant's §2255 motion states that it was placed in the prison mail system exactly one year later (June 22, 2016) and it was filed by the Clerk of Court on June 30, 2016.  Doc. 202, p. 11.[1]

---

[1] In its response, the United States curiously contends that the motion is untimely because defendant "provides no support for his position that he

1

## II. Analysis

Although the petition is not a model of clarity, the Court interprets it as raising several claims based upon ineffective assistance of counsel, many of which are interconnected. Defendant chiefly contends counsel had an inherent conflict of interest due to his having a sexual relationship with the fiance of co-defendant "Michael."[2] According to defendant, the fiance cooperated with investigators against defendant. Defendant also raises other sundry, terse claims, such as alleging that counsel was generally unprepared and forced defendant to plead guilty, failed to investigate properly, failed to "adequately challenge some, if not all, of the

placed the motion in the mail prior to June 22, 2015." Doc. 211, p. 6. However, the United States offers nothing whatsoever to contradict the statement in the motion that it was placed in the prison mail system on June 22, 2016. In the Court's experience, it is not unusual for a pleading submitted by an incarcerated person to not reach the Clerk of Court for eight days, and such a delay is even less suspect considering that defendant is incarcerated in North Carolina. Indeed, the United States cites no authority holding that an eight day delay between the date a document purportedly was placed in the prison mail system and the date the document was received by the Clerk of Court is problematic or inherently suspicious.

Defendant had until June 22, 2016 to seek §2255 relief—exactly one year after the denial of his petition for certiorari (even taking into account the fact that 2016 is a leap year). *See, e.g., United States v. Marcello,* 212 F.3d 1005, 1010 (7th Cir. 2000) ("The first day of the 1-year limitation period is the day after the Supreme Court denies certiorari, giving defendants until the close of business on the anniversary date of the certiorari denial to file their habeas motion. The anniversary date will be the last day to file even when the intervening period includes the extra leap year day."). In the absence of proof to the contrary, the Court accepts defendant's contention that his §2255 is timely under the prison mailbox rule by virtue of it having been placed in the prison mail system on June 22, 2016.

2 Presumably, "Michael" is co-defendant Michael Osborne, though the presentence investigation report (PSR) does not list Osborne as being defendant's sibling. *See* Doc. 145 (sealed PSR), p. 16. Defendant states in his reply that he "refers to Osborne as his 'brother' as Osborne was raised in the same house as Movant from Osborne's pre-teen years -- a fact listed plainly in the PSR." Doc. 215, p. 7. The historical relationship between defendant and Osborne is not discussed in the PSR, though the nature of that relationship need not be explored further at this time since it is an ancillary matter which does not have a direct bearing on defendant's entitlement to §2255 relief.

2

evidence in relation to the drug weights/quantities" and failed to prepare properly defendant to testify at the January 2014 hearing.  Doc. 202, p. 8-9.  Finally, defendant asserts that he is entitled to relief under the cumulative error doctrine.

"A prisoner seeking relief under § 2255 must allege as a basis for relief: (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006).  To be cognizable under §2255, an alleged constitutional error must be of such magnitude as to have "had a substantial and injurious effect or influence on the proceedings." *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999). "Conclusory statements are insufficient to warrant relief under Section 2255." *Combs v. United States*, 2009 WL 943526, at *3 (M.D. Tenn. April 6, 2009).  In addition, "[s]olemn declarations in open court carry a strong presumption of verity.  The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977).

In order to demonstrate ineffective assistance of counsel, a petitioner must make two showings.  "First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S.668, 687 (1984).  A court need not address both prongs if a petitioner fails to make a sufficient showing on either prong.  *See, e.g., United States v. DeGroat*, 102 Fed.Appx. 956, 959 (6th Cir. 2004).  "The Supreme Court has modified *Strickland's* prejudice prong in the context of guilty

3

pleas, holding that a defendant 'must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and instead would have insisted on going to trial.' *Hill v. Lockhart,* 474 U.S. 52, 59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985)." *Pough*, 442 F.3d at 966.  Of course, an attorney cannot be deemed ineffective for failing to raise a meritless argument.  *See, e.g., Bailey v. Smith*, 492 Fed. Appx. 619, 627 (6th Cir. 2012) ("*Strickland* does not require counsel to make meritless requests.").

As the United States notes in its response, most of defendant's claims are too generic and conclusory to warrant §2255 relief.  Defendant's seeming argument to the contrary notwithstanding, the fact that defendant's counsel took his own life subsequent to his representation of defendant is, standing alone, grossly insufficient to warrant habeas relief. Similarly,  defendant's various terse and unsupported claims regarding counsel's alleged failure to: investigate, challenge some unspecified evidence and prepare defendant to testify at the January 2014 hearing are so utterly conclusory and devoid of adequate supporting facts that they cannot be a proper basis for §2255 relief.  *See, e.g., United States v. Mullins*, 2012 WL 1931244, at *2 (E.D. Mich. May 29, 2012) ("Defendant fails to identify the defense witnesses whom counsel failed to investigate and call, nor does defendant specifically identify what the testimony would have been had they been called to testify at trial. Conclusory allegations of ineffective assistance of counsel, without any evidentiary support, do not provide a basis for [§ 2255] relief.") (quotation marks and citation omitted).

The record also refutes defendant's assertions that counsel was unprepared and forced defendant to plead guilty.  At the rearraignment hearing, the following exchanges between the Court and defendant (who was under oath) occurred:

4

THE COURT: Have you discussed not only the charges against you, but the case in general with Mr. Scoville [defense counsel]?

THE DEFENDANT: Yes, sir, Your Honor.

THE COURT: Do you feel like you understand the charges that have been made against you?

THE DEFENDANT: Yes, sir.

THE COURT: And are you satisfied with the advice and representation that Mr. Scoville has given you in the case?

THE DEFENDANT: Yes, sir, Your Honor.

***

THE COURT: Has any -- or have any promises been made to you in exchange for you entering a guilty plea in the case?

THE DEFENDANT: No, sir.

THE COURT: Has anyone threatened or in any way forced you to enter a guilty plea to any charge in the case?

THE DEFENDANT: No, sir, Your Honor.

THE COURT: All right. Are there any promises that have been made of any type? In other words, has the, to your knowledge, has the government agreed to dismiss any charges against you in exchange for entering a plea of guilty, anything of that nature?

THE DEFENDANT: No, sir.

***

THE COURT: All right. Is it your intention to enter a plea of guilty to both Counts 1 and 2 because you are in fact guilty of those two charges and for no other reason?

DEFENDANT: Yes, sir, Your Honor.

Doc. 152, p. 9-28.

Subsequently, counsel vigorously cross-examined co-defendant William Scalf at the evidentiary hearing and also presented defendant's own testimony at that hearing (doc. 153), filed a sentencing memorandum asking for a lenient sentence for defendant (doc. 116), filed extensive objections to the PSR (doc. 145, p. 27-29) and orally argued on defendant's behalf at sentencing. Doc. 154. The extent and nature of counsel's activities on behalf of defendant is directly contrary to defendant's speculative contention that counsel's distressed emotional state prevented him from performing effectively. Defendant also has not shown how counsel failed to challenge properly some unspecified evidence regarding the amount of drugs attributable to

defendant or how the Court's conclusion regarding that amount was erroneous and potentially correctable through the action of counsel.[3]

Moreover, though defendant makes cursory allegations that counsel was conflicted because he represented Osborne for a time on unspecified state charges, defendant has not shown with specificity things such as the dates during which counsel purportedly represented defendant and Osborne simultaneously or how any such simultaneous representation constituted an inherent conflict of interest sufficient to warrant habeas relief.  These deficiencies are rendered more glaring by the fact that defendant was ostensibly aware of counsel's representation of Osborne all along but made no contemporaneous objection thereto, either in this Court or before the Sixth Circuit.  To the contrary, as discussed earlier, defendant stated under oath at rearraignment that he was satisfied with counsel's representation.  In short, defendant has not shown cause or prejudice sufficient to merit §2255 relief stemming from counsel's alleged simultaneous representation of defendant in this Court and defendant Osborne in state court.

The Court now turns its attention to defendant's primary enumerated issue:  defendant's allegation that counsel's sexual relationship with co-defendant Osborne's fiancé, Brooklyn Williams, constituted ineffective assistance of counsel.  As with his prior claims, the allegations regarding counsel's relationship with Williams were not brought contemporaneously to the attention of this Court or the Sixth Circuit.  Additionally, though perhaps such a relationship

---

3 Counsel did challenge the amount of drugs attributable to defendant at the close of the January 2014 evidentiary hearing.  Doc. 153, p. 59-68. Indeed, any additional challenges to the Court's conclusion regarding the amount of drugs attributable to defendant would surely have been futile, especially in light of the fact that the Sixth Circuit affirmed the presiding district judge's findings on that very issue.  *See* Doc. 171, p. 7 ("We are satisfied that the district court's approximation of 8,750 oxycodone pills attributable to Thompson is supported by competent evidence in the record and therefore is not clearly erroneous.") (quotation marks omitted).

could be deemed morally or ethically suspect, defendant has cited no authority holding that such a relationship is an inevitable, inherent conflict of interest sufficient to necessitate habeas relief. Importantly, defendant has not shown that his defense was antagonistic to that of Osborne. Indeed, Osborne submitted a very short statement on defendant's behalf stating that defendant's attorney did propose that his fee for representing Osborne could be satisfied via Williams providing sexual favors to counsel.[4]  Finally, though defendant claims that Williams was cooperating with the authorities against him (defendant Thompson), the record before the Court does not contain concrete evidence of such cooperation.  For example, the transcripts of the rearraignment, evidentiary hearing and sentencing do not contain a single mention of Williams. As the United States aptly notes, "Thompson alleges that Williams cooperated with officials. There is no proof of that. No mention of Williams is found in the extensive record of this case." Doc. 211, p. 8.

The only tangible support for Williams' alleged cooperation provided by defendant is a copy attached to defendant's reply brief of what purports to be a handwritten statement by Williams given to the London, Kentucky police department in June 2013.  Doc. 215-1, p. 5-6. The statement is in no way authenticated by defendant and there is nothing in the record before the Court to show that the statement was provided to the United States and was used to further the prosecution of defendant.  Indeed, the purported statement is signed by Shannon Williams, whereas defendant's §2255 refers exclusively to Osborne's fiancé as Brooklyn Williams—a

---

4 The statement by Osborne is notarized but not explicitly made under oath. Doc. 208-1.  Moreover, the statement does not state that Williams actually accepted counsel's offer and engaged in a sexual relationship with defendant Thompson's attorney—instead only stating that counsel proposed such a relationship.

7

discrepancy not explained by defendant.  In addition, defendant's inclusion of the statement in his reply brief is improper as it is the introduction of new materials to which the United States has not had an opportunity to respond.  But even laying aside those significant foundational and procedural problems, the actual contents of the statement consist mainly of Williams' suspicions and hearsay-type statements regarding defendant having distributed drugs.  The statement is rambling and difficult to follow to the point of being almost incoherent at times.  In short, the Court concludes that defendant has not met his steep burden to show deficient performance and/or prejudice on this issue (i.e., how counsel's alleged relationship with Williams affected defendant's guilt, decision to plead guilty or ultimate sentence), meaning that defendant is not entitled to §2255 relief.[5]

### III.  Conclusion

For the foregoing reasons, defendant's 28 U.S.C. §2255 motion (doc. 202) should be **denied**.

Particularized objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service or further appeal is waived.

*United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005); *Thomas v. Arn*, 728 F.2d 813 (6th

---

5 Defendant also asks for cumulative error relief but since there are no cognizable individual errors, there cannot be cumulative error. *See, e.g., Porter v. United States*, 2015 WL 1033881, at *11 (E.D. Tenn. March 9, 2015) ("In the last claim, which is alleged in Porter's supporting brief and not in his § 2255 motion, he asserts that the doctrine of 'cumulative error' should govern his claims of ineffective assistance and that the combination of alleged attorney errors, when viewed together, show that his criminal proceedings were fundamentally unfair. However, because Porter's allegations of ineffective assistance are groundless, there is no need to apply the cumulative error doctrine. The Court has found no errors on the part of Porter's attorney and, thus, there are no attorney errors to accumulate.") (citations and paragraph break omitted).

Cir. 1984), aff'd, 474 U.S. 140, 155 (1985). A general objection that does not "specify the issues of contention" is not sufficient to satisfy the requirement of a written and specific objection. *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995)(citing *Howard v. Secretary of HHS*, 932 F.2d 505, 508-09 (6th Cir. 1991)).   Poorly drafted objections, general objections, or objections that require a judge's interpretation should be afforded no effect and are insufficient to preserve the right of appeal.  *Howard*, 932 F.2d at 509.  A party may respond to another party's objections within fourteen days of being served with a copy of those objections.  Fed. R. Civ. P. 72(b)(2).

This the 29th day of September, 2016

**Signed By:**

**_J. Gregory Wehrman_**

**United States Magistrate Judge**