UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
AT LONDON

Eastern District of Kentucky
**FILED**

MAR 30 2017

AT COVINGTON
ROBERT R. CARR
CLERK U.S. DISTRICT COURT

CRIMINAL ACTION NO. 6:13-cr-30-DCR
(CIVIL ACTION NO. 6:16-cv-130)

JOHN THOMPSON                                                PETITIONER

VS.                    **REPORT AND RECOMMENDATION**

UNITED STATES OF AMERICA                                     RESPONDENT

This case comes before the Court on a 28 U.S.C.A. § 2255 habeas corpus petition filed by the Petitioner, John Thompson. (Criminal Action No. 6:13-cr-30, Doc. 202).[1] The Court held an evidentiary hearing on the matter on March 23 – 24, 2017 in Covington, Ky. (Doc. 254). Timothy Schneider appeared on behalf of Thompson and T. Lee Gentry appeared on behalf of the United States. Thompson called three witnesses over the two days: himself, Michael Osborne, and Shannon Brooklyn Williams. The government declined to call any witnesses. Following that hearing, and being duly advised, this Court now issues this Report and Recommendation.

## Facts

This case involves Thompson and Michael Osborne, two men from London, Ky. who are not biologically related, but who consider themselves "brothers." (Evid. Hrg. 3/23/17). On January 3, 2013, Osborne allegedly threatened to injure Lisa Ann Spencer unless Spencer gave Osborne the proceeds of her Social Security check. (Hrg.

---

[1] All docket citations in this Report and Recommendation are to Criminal Action No. 6:13-cr-30.

1

Ex. 1, p. 5). The incident lingered, but Osborne did not face charges until Whitley County, Ky. officers arrested him on July 8, 2013, for a second degree robbery charge. (*Id.* at p. 1). After initially consulting with a public defender, Osborne retained Warren Scoville, a prominent attorney in London, to represent him.

Also in early 2013, both Thompson and Osborne became involved in an oxycodone trafficking conspiracy. Kentucky state law enforcement officials arrested Thompson and Osborne on June 20, 2013 on Kentucky state drug trafficking charges. That afternoon, Osborne's fiancé, Shannon Brooklyn Williams, went to London Police and wrote out a statement that supported the government's case. (Doc. 215-1, PageID# 1195–96). On June 26, 2013, Thompson, Osborne, and Williams went to Scoville's office. (Evid. Hrg. 3/23/17). Thompson paid Scoville $500 that day, and returned within 24 hours with $500 more. (*Id.*). This was partial payment of approximately $10,000 fee Scoville charged Thompson to represent him on all drug-related charges. (Doc. 215-1, PageID# 1198–99).

It is not clear what advice or representation Scoville gave Osborne regarding the state drug charges, but Scoville was clearly representing Osborne on the second degree robbery charge after it was filed on July 8, 2013.

In the two months between June 26 and August 20, 2013, Osborne returned to Scoville's office on at least two other occasions to discuss his case. (Evid. Hrg. 3/23/17). On one occasion, he claims he found Scoville's office door locked. (*Id.*). When Scoville opened the door, Thompson says Scoville was "pulling his trousers up" and

2

Williams was crying. (*Id.*). Thompson testified that he then spoke with Scoville while Williams remained in the room. (*Id.*).

On a later occasion, Thompson says Scoville was upset that Thompson had failed to pay the full attorney's fee, and threatened that he would take Williams on vacation with him as payment for representing Osborne, and that he would get Osborne a "deal" instead of Thompson. (*Id.*). Thompson believed Scoville was serious and not joking. (*Id.*). Osborne testified that he was not sure whether a relationship between his fiancé and Scoville took place, but denied that he and Scoville had the sort of untraditional fee arrangement that Thompson's story alleges. (*Id.*).

On August 19, 2013, Whitley County dismissed the second degree robbery charge against Osborne, thus ending Scoville's representation of Osborne. (Hrg. Ex. 1, p. 1).

On August 27, 2013, Scoville drove Osborne and Thompson to federal authorities, and both were arraigned on federal drug trafficking charges. (Evid. Hrg. 3/23/17; Doc. 35). Douglas Benge was appointed Osborne's counsel under the Criminal Justice Act. (Doc. 40). Scoville remained Thompson's counsel in the federal criminal matter. (Doc. 28).

In November 2013, Thompson pled guilty to two counts related to the sale of oxycodone. (*See* Doc. 97; Doc. 152). He was later sentenced to 190 months in prison. (Doc. 154, PageID# 630). That sentence included a two-level enhancement for obstruction of justice, increasing his offense level from 32 to 34. (Doc. 154, PageID# 615).

3

On direct appeal, the Sixth Circuit rejected Thompson's arguments that the district court erroneously enhanced his sentence for obstruction of justice and erred by refusing to grant him an acceptance of responsibility reduction. *United States v. Anderson*, 616 Fed. App'x. 770 (6th Cir. 2015)(unpublished). The Supreme Court of the United States then denied certiorari on June 22, 2015. *Thompson v. United States*, 135 S. Ct. 2877 (2015).

Thompson placed this § 2255 petition in the prison mail on June 22, 2016. (Doc. 202, PageID# 1090). In his petition, Thompson raises a claim that Scoville provided ineffective assistance of counsel. The district court referred the matter to this Court. On September 29, 2016, this Court issued its Report and Recommendation that the district court deny Thompson's petition. (Doc. 217). Thompson objected to that Report and Recommendation and included an alleged affidavit from Williams stating that Scoville, "proposed that instead of paying with money for his services we engage in sexual contact." (Doc. 220-1, PageID# 1229).[2] In part because of this newfound evidence, the district court issued an Order on November 8, 2016, referring the matter back to this court for further consideration of "the appropriate legal standard for evaluating Six[th] Amendment claims based on alleged attorney conflicts of interest." (Doc. 225, PageID# 1248).

---

[2] This affidavit has been called into question. First, the affidavit misspells Williams' first name. (Doc. 220-1, PageID# 1229 (compare first line with signature)). Second, Williams testified that she did not type it or have it prepared. (Evid. Hrg. 3/24/17). Instead, two of Thompson's friends came to her home on October 9, 2016 and "intimidated" her to sign the paper. (*Id.*). Williams claimed the men then got the paper notarized after the fact, outside of her presence. (*Id.*). Third, Williams refutes the content of the affadavit, (*id.*), and no other witness was able to rebut her. (Evid. Hrg. 3/23/17).

4

Following an evidentiary hearing, the Court issues this Report and Recommendation.

## Analysis

### A. The differences between the *Strickland* and *Cuyler* tests

Before deciding whether Warren Scoville provided John Thompson with ineffective assistance of counsel in violation of the Sixth Amendment, this Court must decide which standard of analysis applies to these facts. That requires an examination of *Strickland v. Washington* and *Cuyler v. Sullivan*. *Strickland v. Washington*, 466 U.S. 668 (1984); *Cuyler v. Sullivan*, 446 U.S. 335 (1980).[3] As the district court noted, "the standard for relief under *Cuyler* differs from the standard for relief under *Strickland*," and the subtle difference between the two standards is immensely important for cases like this. (Order, Doc. 225, PageID# 1249).

Both *Cuyler* and *Strickland* present two-prong tests. But the tests have slightly different language, resulting in different standards the Petitioner must meet. The *Strickland* standard for ineffective assistance of counsel requires the Petitioner to show "(1) that his or her attorney 'made errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment,' and (2) that the attorney's deficient performance was so **prejudicial** that it 'deprive[d] the defendant of a fair trial, a trial whose result is reliable.'" *See Harris v. Carter*, 337 F.3d 758, 761 (6th Cir. 2003)(emphasis added)(quoting *Strickland*, 466 U.S. at 687).

---

[3] In September, before Williams' alleged affidavit and the district court's order, this Court analyzed the case under *Strickland*.

By contrast, *Cuyler* requires the petitioner to show that "an actual conflict of interest **adversely affected** his lawyer's performance." *Cuyler*, 446 U.S. at 348 (emphasis added). If the petitioner can show that, then the Court will presume prejudice.

To synthesize the two, *Strickland* requires: (1) deficient performance and (2) prejudice. *Cuyler* only requires (1) actual conflict of interest and (2) adverse effect. As one scholar noted, "[t]he difference between the two tests is that the [*Cuyler*] rule only requires an adverse [e]ffect, while the *Strickland* test requires the higher standard of proof of actual prejudice." Scott W. Street, *Schwab v. Crosby: Interpreting the Scope of the Supreme Court's Tests for Ineffective Assistance of Counsel and Conflicts of Interest*, 31 Am. J. Trial Advoc. 651, 651 (2008).[4] The difference between the two standards is therefore determinative in many cases. *See, e.g., Benge v. Johnson*, 474 F.3d 236, 245 (6th Cir. 2007).

### B. When to apply the *Cuyler* test

There has been much debate over the past three decades about the proper time to apply the lower *Cuyler* standard. *Cuyler* itself merely involved an attorney who represented two defendants in the same case—also known as multiple representation—and that remains the only instance in which the Supreme Court has applied the *Cuyler* standard. *See Mickens v. Taylor*, 535 U.S. 162, 174–75 (2002).

---

[4] "Thus, a claim of ineffective assistance of counsel alleging an actual conflict of interest, as defined in *Cuyler*, involves a lessened standard of proof than that typically required to establish a claim of ineffective assistance of counsel under the two-part standard established in *Strickland v. Washington*." *Benge v. Johnson*, 312 F. Supp. 2d 978, 993 (S.D. Ohio 2004), *aff'd*, 474 F.3d 236 (6th Cir. 2007).

But lower courts were more expansive in their application. *Id.* (citing cases that applied *Cuyler* beyond multiple representation to situations involving successive representation, pecuniary interests, and social contact with opposing counsel).

In response, the Supreme Court significantly cabined the growth of the *Cuyler* doctrine in 2002. In *Mickens v. Taylor*—a case involving counsel who had also represented the victim in a murder case—the Court found that it was an "open question" whether *Cuyler* applies to non-mutual representation fact patterns like successive representation. *Mickens*, 535 U.S. at 176. The Court noted that it has yet to comment on whether other types of potential conflicts get *Cuyler* treatment, and left it as an open question.

In the wake of *Mickens*, the Sixth Circuit and other courts severely cut back the frequency with which they used *Cuyler*. The Sixth Circuit declined to apply *Cuyler*—and instead analyzed the case under *Strickland*—when defense counsel was arguably conflicted because he was facing prosecution for an unrelated crime in the same jurisdiction. *Smith*, 312 F.3d at 818. Similarly, courts throughout the Sixth Circuit have consistently found that successive representation does not trigger *Cuyler*. *See, e.g., Goward v. United States*, 569 Fed. App'x. 408, 413 (6th Cir. 2014); *Phillips v. Berghuis*, 11-13386, 2014 WL 1377659, at *9 (E.D. Mich. Apr. 8, 2014); *Stewart v. Wolfenbarger*, 468 F.3d 338, 351 (6th Cir. 2006); *Whiting v. Burt,* 395 F.3d 602, 618–19 (6th Cir. 2005); *Lordi v. Ishee,* 384 F.3d 189, 193 (6th Cir. 2004).

In subsequent cases, the Sixth Circuit found that *Cuyler* did not apply when an attorney concurrently represented a prosecution witness facing charges in an

7

unrelated case. *Benge*, 474 F.3d at 245. Nor does *Cuyler* apply when the attorney defends a man charged with arson while representing the fire insurance company that covered the building. *Kumar v. United States*, 163 Fed. App'x. 361, 366 (6th Cir. 2006). Outside the Sixth Circuit, the Ninth Circuit found that an "intimate relationship between [the defendant] and his counsel during the trial and sentencing did not constitute a conflict of interest" within the meaning of *Cuyler*. *Earp v. Ornoski*, 431 F.3d 1158, 1185 (9th Cir. 2005).

Thus, it is clear that lower federal courts have received the *Mickens* Court's message, and have been reticent to apply the *Cuyler* doctrine. These courts have acknowledged that the Supreme Court has only applied *Cuyler* to multiple concurrent representation situations, defined as "a single attorney simultaneously represent[ing] two or more codefendants in the same or separate proceeding(s)." *Jalowiec v. Bradshaw*, 657 F.3d 293, 315 (6th Cir. 2011), as amended (Nov. 23, 2011) (citing *Moss v. United States*, 323 F.3d 445, 455, 459 (6th Cir. 2003)).

Yet, in rare situations, the Sixth Circuit has shown a willingness to apply *Cuyler* beyond the traditional situation of two or more defendants facing the same or similar charges before the same court in the same case at the same time.

The first such instance was the 2003 case of *Moss v. United States*. 323 F.3d 445 (6th Cir. 2003). In *Moss*, the attorney initially represented one defendant in the pre-indictment proceedings, then completed his representation. Later, in the same case, the attorney represented a co-defendant at trial. The Sixth Circuit found that the situation was not successive representation, but rather mutual representation.

*Moss*, 323 F.3d at 462. Because the two clients were intertwined, and because they collaborated in mounting a defense, the Sixth Circuit found that *Cuyler* applied.[5] *Id.*

Next, the Sixth Circuit addressed but did not clearly apply *Cuyler* in a case in which an attorney represented both defendants in a drug conspiracy case. *McFarland v. Yukins*, 356 F.3d 688 (6th Cir. 2004). The facts of that case indicated that the best defense would have been to attempt to pin the blame for the drugs on the co-defendant. By attempting to represent both defendants, the attorney was not only adversely affecting his clients, but prejudicing them by removing the best possible defense. Since it was immaterial whether *Cuyler* or *Strickland* applied, the Court did not explicitly decide the matter. *Id.* at 701.

Most recently, in *Jalowiec v. Bradshaw*, the Sixth Circuit declined to decide whether *Cuyler* applied when the attorney represented the defendant and one of the prosecution's star witnesses in a state murder case. *Jalowiec v. Bradshaw*, 657 F.3d 293 (6th Cir. 2011), *as amended* (Nov. 23, 2011). The attorney initially represented the witness as he plead guilty to a host of charges unrelated to the murder. Eventually the witness agreed to give a statement to police that implicated the defendant. Soon after, the witness received a lenient prison sentence—though it was not clear if the leniency was because of his cooperation with the state's murder investigation. The attorney then began to represent the defendant, who was indicted a few months later. That meant "representation of the two [clients] overlapped for several months." *Jalowiec*, 657 F.3d at 316. While the attorney was representing the

---

[5] The Sixth Circuit went on to apply *Cuyler* and found no adverse effect at the second step. *Moss v. United States*, 323 F.3d 445, 470 (6th Cir. 2003).

9

defendant on the murder charges, he also filed a motion for the witness to be released from prison and placed on probation. After the witness was released on probation, the witness testified at the defendant's murder trial, where he was cross-examined by the attorney's co-counsel.

The Sixth Circuit found that the facts in *Jalowiec* did "not make out the classic sort of multiple concurrent representation of co-defendants in the same criminal prosecution that was addressed in [*Cuyler*]." *Id.* at 316. Still, the concurrent representation of a witness and a defendant—albeit in separate cases—"posed some concerns akin to those identified in cases where the first prong of the [*Cuyler*] standard was deemed satisfied." *Id.*

Without deciding whether the facts met the first prong of *Cuyler*, the Court skipped to the second prong—asking whether the attorney's actions had an adverse effect on the defendant. *Id.* at 318. Since adverse effect is a lesser burden than showing prejudice, failure to meet that second prong of *Cuyler* would also preclude the second prong of *Strickland*. The defendant in *Jalowiec* could not show adverse effect. *Id.* Therefore, the Sixth Circuit was able to deny habeas relief without having to decide whether *Cuyler* applied to the facts.

### C. The *Cuyler* standard does not apply to these facts

Thompson argues there were two "actual conflict[s]" that might have adversely affected him if analyzed under the *Cuyler* doctrine. *Cuyler*, 446 U.S. at 348. First, Thompson notes Scoville concurrently represented him and Osborne in July and August of 2013. Second, Thompson alleges Scoville engaged in a sexual relationship

with Williams, and that Williams was a potential material witness for the prosecution against Thompson. This Report and Recommendation analyzes each argument in turn and finds that neither triggers *Cuyler*'s reduced standard.

### 1. The multiple representation in this case was not at a critical stage, and therefore does not trigger *Cuyler*

Though Warren Scoville did concurrently represent John Thompson and Michael Osbrone—even if it was not as counsel of record before a court—the concurrent period was not at a critical stage of the proceedings, and therefore does not trigger *Cuyler*'s reduced standard. This case potentially falls into the *Cuyler* line because Scoville represented both Thompson and Osborne at the same time in the summer of 2013. *See Mickens*, 535 U.S. at 174–75.[6]

Still, even if this constitutes multiple representation, it was not sufficient to trigger *Cuyler*. As the Sixth Circuit has noted, "*Cuyler* covers only cases of 'joint representation at trial.'" *Benge*, 474 F.3d at 244–45 (quoting *Smith,* 312 F.3d at 815). This implies that *Cuyler* only applies if the multiple representation is at a critical juncture of the case. Here, Scoville did not represent Osborne at the critical phases of this case such as sentencing; Douglas Benge was Osborne's counsel on the drug charges after the federal indictment.[7] Benge remained Osborne's counsel through Osborne's sentencing (Doc. 99), while Scoville represented Thompson through

---

[6] As the government points out, there was never a period of multiple representation *on the record*. But there was a period of multiple representation *off the record*. The "representation of the two [clients] overlapped for several months." *Jalowiec*, 657 F.3d at 316.

[7] Scoville did not represent Osborne in the federal case at all, and therefore does not fall into a potential mutual representation situation like in *Moss*. *Moss*, 323 F.3d at 462.

11

sentencing. Therefore, Osborne was not one of Scoville's clients at the critical stages of the drug case.[8]

### 2. Williams was not a prosecution witness

At the evidentiary hearing on March 23, 2017, T. Lee Gentry, the prosecutor from the underlying federal case, told the Court he was not planning to call Williams as a prosecution witness if the case had gone to trial. (Evid. Hrg. 3/23/17). Even if Williams was a prosecution witness, though, that still would not make this a *Cuyler* case. As the Sixth Circuit found in *Benge v. Johnson*, concurrent representation of a prosecution witness does not trigger *Cuyler*. *Benge*, 474 F.3d at 244–45. Because representing a witness and a defendant does "not make out the classic sort of multiple concurrent representation of co-defendants in the same criminal prosecution that was addressed in" *Cuyler*, the *Cuyler* standard would not apply here even if Williams would have been called as a witness. *Jalowiec*, 657 F.3d at 316.

### D. The facts of this case do not meet the *Strickland* prejudice standard

Since *Cuyler* does not apply, this Court must apply the two-prong *Strickland* test, as it did before. (Doc. 217). Under this standard, neither of the scenarios above prejudiced Thompson, and therefore do not pass the *Strickland* test.[9]

---

[8] This Court need not address whether *Cuyler* applies when an attorney represents a defendant during the critical stage of a pending case while concurrently representing a co-defendant in a separate unrelated pending case.

[9] At the evidentiary hearing on March 23, 2017, Thompson raised for the first time a claim that Scoville told him to lie at his sentencing hearing about the number of pills he received and sold in the conspiracy. Thompson claimed that this perjury directly led to his two-level sentencing enhancement for obstruction of justice, and Thompson believes Scoville's alleged directive to lie was a Sixth Amendment error. This Court, however, did not find that testimony credible. First, it was hearsay without any possibility of rebuttal, since Scoville died on May 7, 2015. Second, it is curious that this is the first time Thompson raised the allegation. When drafting his *pro se* § 2255 filing in June 2016, Thompson did not mention

12

First, Scoville's representation of Osborne in the state court robbery case in 2013 did not prejudice Thompson. There is no evidence that Scoville altered his representation of Thompson in the federal drug case in any way because of his representation of Osborne in the state court case prior to the federal indictment.

Second, even assuming *arguendo* that Scoville had a relationship with Williams, the Assistant United States Attorney prosecuting the case stipulated on the record that he did not plan on using Williams as a government witness against Thompson. Even if Williams was a witness against Thompson, concurrent representation of a witness and a defendant does not necessarily prejudice the defendant. *See Jalowiec*, 657 F.3d at 316 (holding this situation does not create and adverse effect, which is a lesser burden than showing prejudice).

Therefore, Thompson cannot show that he was prejudiced by Warren Scoville's actions. Since he cannot meet the *Strickland* standard for ineffective assistance of counsel, Thompson is not entitled to relief.

### E. Conclusion

For the foregoing reasons, Petitioner's 28 U.S.C. §2255 motion (Doc. 202) should be denied. Particularized objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service or

---

this allegation, even though the filing thoroughly set every basis for an ineffective assistance of counsel claim he had at the time. The Court finds it improbable that Thompson could have simply forgotten or omitted a fact as potentially consequential as his attorney directing him to lie on the stand. When these factors are combined with Thompson's demeanor on the stand and the Thompson's other two documented incidents of deceit in this case—the perjury before Judge Reeves and the affidavit incident set out in footnote 2—this Court does not give any credence to Thompson's testimony. Thus, this Report and Recommendation will not analyze this case as if this alleged directive occurred.

further appeal is waived. *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005); *Thomas v. Arn*, 728 F.2d 813 (6th Cir. 1984), *aff'd*, 474 U.S. 140, 155 (1985). A general objection that does not "specify the issues of contention" is not sufficient to satisfy the requirement of a written and specific objection. *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995)(citing *Howard v. Secretary of HHS*, 932 F.2d 505, 508-09 (6th Cir. 1991)). Poorly drafted objections, general objections, or objections that require a judge's interpretation should be afforded no effect and are insufficient to preserve the right of appeal. *Howard*, 932 F.2d at 509. A party may respond to another party's objections within fourteen days of being served with a copy of those objections. Fed. R. Civ. P. 72(b)(2).

This the **30** day of March, 2017.

*[signature]*